WEST, WEBB, ALBRITTON & GENTRY, P.C.
GAINES WEST (SBN 21197500)
gaines.west@westwebblaw.com
JENNIFER D. JASPER (SBN 24027026)
jennifer.jasper@westwebblaw.com
1515 Emerald Plaza
College Station, TX  77845-1515
Tel:  (979)694-7000
Fax: (979)694-8000

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
JENNIFER A. TRUSSO, Cal. Bar No. 198579
jtrusso@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:  714-513-5100
Facsimile:   714-513-5130

Attorneys for Specially Appearing David
Whitinger

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Re: The Deposition Subpoenas Served on Internet Brands Inc's Attorneys and Chief Technology Officer,<br><br><div align=center>Movant</div> | Case No. 2:11-cv-0751 PSG (RZx)<br><br>**DAVID WHITINGER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS OPPOSITION TO INTERNET BRANDS' MOTION TO QUASH**<br><br>Hearing Date: March 7, 2011<br>Courtroom:  880<br>Time:  1:30 p.m. |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. RELEVANT FACTS ........................................................................................3

    A.    Relationship between Whitinger and Internet Brands ............................3

    B.    Whitinger Seeks Giberti's And Walsh's Deposition As Facts Witnesses...........................................................................................4

    C.    Whitinger Seeks Rosenblum's Deposition As A Fact Witness .............6

    D.    Internet Brands Brings The Dispute Over All Three Depositions To California ...........................................................................................8

III. ARGUMENTS AND AUTHORITIES ..........................................................10

    A.    Whitinger Is Entitled To Discover Information That Is Relevant To His Claims .......................................................................................10

    B.    Giberti, Walsh And Rosenblum All Have Relevant Information.........12

        1.    Giberti is a fact witness with discoverable information .............12

        2.    Walsh is a fact witness with discoverable information ..............14

        3.    Rosenblum is a fact witness with discoverable information ......15

    C.    Internet Brands' Reliance On *Shelton* Is Misplaced ............................16

    D.    Authority Of This Court To Deny Internet Brands' Motion and to Compel And Hold In Contempt..........................................................17

IV. CONCLUSION ..............................................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

1

## TABLE OF AUTHORITIES

2

Page(s)

3

Federal Cases

4

*American Cas. Co. of Reading, Pa. v. Krieger*,

5
    160 F.R.D. 582 (S.D. Cal. 1995) .................................................................. 11, 12

6

*Daval Steel Prods. v. M/V Fakredine*,

7
    951 F.2d 1357 (2d Cir. 1991) ............................................................................ 17

8

*Harte-Hands Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989) .......................................................................................... 13

9

10

*In re Interactive Network*,
    243 B.R. 766 (N.D. Cal. 2000) ......................................................... 11, 12, 13, 14

11

12

*In re Syncor Erisa Lit*,
    229 F.R.D. 636 (C.D. Cal. 2005) ...................................................................... 10

13

14

*Mori v. Baroni*,
    No. CIV–S–07–0295–JAM GGH, 2008 WL 2509143 (E.D. Cal. 2008) .... 11, 12

15

16

*Nakash v. U.S. Dept of Justice*,
    128 F.R.D. 32 (S.D.N.Y. 1989) ........................................................................ 10

17

18

*Shelton v. American Motors Corp.*,
    805 F.3d 1323 (8th Cir. 1986) .......................................................................... 16

19

*U.S. v. Phillip Morris, Inc.*,
    209 F.R.D. 13 ............................................................................................. 10, 16

20

21

*Upjohn Co. v. United States*,
    499 U.S. 383 (1981) ................................................................................... 11, 13

22

23

*Younger Mfg Co. v. Kaenon, Inc.*,
    247 F.R.D. 586 (C.D. Cal. 2007) ...................................................................... 16

24

State Cases

25

26

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002) ............................................................................... 13

27

28

*Huie v. DeShazo*,
    922 S.W.2d 920 (Tex. 1996) ............................................................................. 11

W02-WEST:3JDF1\403300872.1

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

Fed. R. Civ. P. 26(a)(1)(A) ........................................................................... 4

Fed. R. Civ. P. 26(a)(1)(A)(i) .................................................................... 2, 7

Fed. R. Civ. P. 26(a)(1)(A)(ii) ..................................................................... 14

Fed. R. Civ. P. 26(b)(1) ............................................................................... 10

Fed. R. Civ. P. 37 (a)(3)(B)(i) ..................................................................... 17

Fed. R. Civ. P. 45 ..................................................................................... 1, 17

Fed. R. Civ. P. 45(a)(2)(b) ............................................................................ 2

Fed. R. Civ. P. 45(e) ............................................................................... 2, 17

Local Rule 37 ........................................................................................... 1, 17

<u>State: Statutes, Rules, Regulations, Constitutional Provisions</u>

Rules 7-3, 37-1 and 45 ............................................................................. 1, 17

Rule 26 ....................................................................................................... 4, 6

Rule 30(a)(1) .............................................................................................. 10

Rule 30(b)(6) ................................................................................................ 5

<u>Other Authorities</u>

C. Wright & Miller, <em>Federal Practice & Procedure</em> § 2037 (1970) ....................... 10

W02-WEST:3JDF1\403300872.1

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

# I.

# **INTRODUCTION**

Whitinger properly noticed and served deposition subpoenas *from this Court* on Internet Brands employee witnesses Giberti, Walsh, and Rosenblum. Internet Brands' witnesses deliberately ignored those subpoenas, without any court-ordered relief therefrom, and Whitinger was forced to take Certificates of Non-Appearance.

Internet Brands apparently relied on its late-filed Motion to Quash filed on the day of the deposition as its *only* support for its decision to ignore the deposition subpoenas issued *from this court*. The Motion to Quash, however, was procedurally defective, and substantively flawed. Internet Brands' Motion was procedurally defective because it failed to comply with Fed. R. Civ. P. 45, which required it to "timely" file its Motion to Quash. *See* Fed. R. Civ. P. 45. A motion to quash filed *on the day* of the deposition is <u>not</u> timely. Furthermore, Internet Brands violated Local Rules 7-3, 37-1 and 45 by not first meeting and conferring with counsel and following the proper procedures provided by Local Rule 37 (or seeking relief from these rules from the court).

Internet Brands' Motion is also substantively flawed because it has failed to demonstrate *any* adequate basis for its refusal to respond to the properly noticed subpoenas, or for the issuance of a protective order.

On June 2, 2010, Dave Whitinger, ("Whitinger") filed a diversity lawsuit Cause No. 10–cv–00276–MHS in the Federal District Court for the Eastern District of Texas, Tyler Division ("Texas Court"), against Defendants Internet

1   Brands, Inc. and Michael Egan for defamation, business disparagement, and a

2   declaratory judgment ("the Texas lawsuit").  In the course of discovery in the Texas

3   lawsuit, Whitinger sought the depositions of three fact witnesses, Wendi Giberti

4   ("Giberti"), Lynn Walsh ("Walsh"), and Joseph Rosenblum ("Rosenblum"), all of

5   whom are California residents who work for Internet Brands.  Internet Brands, Inc.

6   ("Internet Brands") disclosed both Giberti and Walsh in its Initial Disclosures

7   pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), as persons who have "knowledge of

8   facts," regarding Internet Brands' claims and/or defenses and it subsequently

9   provided a Declaration from Rosenblum, which indicated he has specific knowledge

10  related to the defamation claims.

11

12        Whitinger noticed the depositions of Giberti, Walsh, and Rosenblum

13  for January 25, and January 26, 2011, in El Segundo, California, and, pursuant to

14  Fed. R. Civ. P. 45(a)(2)(b), served these witnesses with deposition subpoenas issued

15  from this Court.  *See* Declaration of Gaines West ("West Dec.") filed herewith at

16  ¶¶11, 14, and Exhibits I-1 and L thereto.  On January 25, 2011, the day of the

17  depositions, Internet Brands filed a Motion to Quash and for Protective Order.  *See*

18  Docket Entry ("DE") 1.  Internet Brands did not seek an expedited hearing or any

19  other emergency relief from this Court.  Nevertheless, without any justification,

20  these Internet Brands employee witnesses failed to appear at their depositions, and

21  Whitinger's counsel was forced to take a Certificate of Non-Appearance for Giberti,

22  Walsh, and Rosenblum.  *See* West Dec. at ¶ 21 and Exhibit R thereto.

23

24        Accordingly, Whitinger requests that the Court deny Internet Brands

25  Motion to Quash and for Protective Order.  Further, pursuant to Fed. R. Civ. P.

26  45(e) Whitinger asks this Court to hold Internet Brands and the three witnesses in

27  contempt for violating the deposition subpoenas; and Whitinger requests that this

28

-2-

Court compel the deposition testimony of Giberti, Walsh, and Rosenblum, <u>at the earliest possible date</u>.

## II.
## <u>RELEVANT FACTS</u>

**A.      <u>Relationship between Whitinger and Internet Brands</u>**

Whitinger is a website developer and entrepreneur. *See* Declaration of David Whitinger ("Whitinger Dec.") at ¶2. After conceiving and developing davesgarden.com, he subsequently sold the website to NameMedia, LLC ("NameMedia") (not a party to this case). *See* Whitinger Dec. at ¶3. A few years later, NameMedia sold the website to Internet Brands. *See* Whitinger Dec. at ¶3.

On May 24, 2010, Internet Brands sent Whitinger a cease and desist letter, signed by Wendy Giberti, which demanded that Whitinger take down his website, cubits.org, because it allegedly violated Whitinger's non-competition agreement with NameMedia, which had supposedly been assigned to Internet Brands when it purchased davesgarden.com. *See* Whitinger Dec. at ¶6. and Exhibit A thereto. (Cubits.org was another website Whitinger had begun to develop. *See* Whitinger Dec. at ¶5.) Internet Brands' cease and desist letter accused Whitinger of committing various illegal acts which violated state and federal law, primarily based on the contention that Internet Brands had an enforceable non-compete agreement with Whitinger.

After receiving the letter, Whitinger demanded that Internet Brands provide some evidence that its purchase of davesgarden.com from NameMedia

included the assignment of Whitinger's non-competition agreement.  *See* Whitinger Dec. at ¶7.  Internet Brands failed to respond.  *See* Whitinger Dec. at ¶7.  Whitinger then posed the same question to NameMedia, who responded: "We [NameMedia] reviewed the Agreement with Internet Brands and did not see your Employee Confidentiality and Non Solicitation Agreement as being assigned." *See* West Dec. at ¶ 6 and Exhibit E attached thereto; *see also* Whitinger Dec. at ¶7.  In any event, Whitinger did take down the cubits.org website while he considered Internet Brands' assertions, although within 24 hours, he put the site back up.  *See* Whitinger Dec. at ¶7.

Within a few days, on May 28, 2010, Internet Brands and Michael Egan (a general manager) posted defamatory remarks against Whitinger on the davesgarden.com website.  *See* Whitinger Dec. at ¶8; *see also*, Exhibit D to West Dec.  The defamatory remarks, not surprisingly, related directly back to the cease and desist letter.  *Compare* Exhibit D to West Dec. *and* Exhibit A. to Whitinger Dec.  Although the post did not quote the cease and desist letter verbatim, generally speaking, the allegations in the post had been specified in the cease and desist letter.  Whitinger immediately demanded a retraction from Egan and Internet Brands, but they refused.  *See* Whitinger Dec. at ¶9.  As a result, Whitinger filed the Texas lawsuit.

**B.    Whitinger Seeks Giberti's And Walsh's Deposition As Facts Witnesses**

In the Texas lawsuit, Internet Brands identified six fact witnesses in its Rule 26 Initial Disclosures.  *See* West Dec. at ¶ 7 and Exhibits F-1 and F-2 attached thereto.  The six witnesses listed pursuant to Federal Rule 26(a)(1)(A) included Wendy Giberti, whom Internet Brands indicated **"has knowledge of facts**

**surrounding the cease and desist letter sent to Plaintiff Whitinger**"; and Lynn Walsh, whom Internet Brands indicated "**has knowledge of the <u>facts</u> surrounding the Asset Purchase and Sales Agreement entered into by and between NameMedia and Internet Brands and the rights and interests transferred under the agreement**." *See* West Dec. at ¶ 7 and Exhibit F-1 and F-2 attached thereto (emphasis added).   That is, admittedly, Walsh has knowledge of facts related to whether the non-competition was assigned as part of the Asset Purchase and Sale Agreement between NameMedia and Internet Brands.  On October 13, 2010, Internet Brands filed a Supplemental Disclosure to add an additional witness, but it did not remove Giberti or Walsh as fact witnesses with that supplementation. *See* Exhibit F-2 to West Dec.  To date, in the Texas lawsuit, Giberti and Walsh remain listed as fact witnesses on Internet Brands' Initial Disclosures.

In November 2010, Whitinger's counsel sent to Internet Brands' counsel a list of topics for a Rule 30(b)(6) deposition of a representative(s) of Internet Brands.  *See* West Dec. at ¶8 and Exhibit G thereto.  Topic 1 was: "Person most knowledgeable regarding the negotiation and sale of davesgarden.com from NameMedia to Internet Brands."  *See* West Dec. at ¶8 and Exhibit G thereto.  In a November 23, 2010 telephone conference, Internet Brands' counsel indicated to Whitinger's counsel that Walsh would be the person with the most knowledge of topic 1.  *See* West Dec. at ¶8.  Never once during this conversation did Internet Brands' counsel state that it would not make Walsh available for deposition or that it objected to the taking of her deposition.  To the contrary, Internet Brands' counsel promised to get deposition dates for Walsh.  (<u>Id.</u>).

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

On December 28, 2010, Whitinger's counsel requested to depose Giberti on January 25, 2011.[1]  *See* West Dec. at ¶9.  Internet Brands' counsel, somewhat astonishingly, replied that he *did not think Giberti was a fact witness*, and asked why Whitinger's counsel believed any of her testimony was relevant.  *See* West Dec. at ¶9.  Whitinger's counsel's response was two-fold: first, Giberti wrote the cease and desist letter; and second, Internet Brands *already admitted* Giberti "has knowledge of facts surrounding the cease and desist letter sent to Plaintiff Whitinger" in its Rule 26 Initial Disclosures.  *See* West Dec. at ¶10.

On December 30, 2010, Whitinger served notices on Internet Brands' counsel for Giberti's deposition and Walsh's deposition.  *See* West Dec. at ¶11, *see also* Exhibits I-1, I-2.  Furthermore, Whitinger served Giberti and Walsh each with a deposition subpoena <u>issued from this Court</u>.  *See* Exhibits I-1 to West Dec.  On January 12, 2011, Internet Brands improperly filed an untimely Motion to Quash and Motion for Protective Order in the Texas Court  with respect to Giberti's and Walsh's depositions ("Texas Motion to Quash").  *See* West Dec. at  ¶15 and Exhibit M thereto.

## C.    <u>Whitinger Seeks Rosenblum's Deposition As A Fact Witness</u>

On December 2, 2010, while Whitinger was in El Segundo, California attending the depositions of Internet Brands' witnesses in the Texas lawsuit, Internet Brands *served Whitinger with process* for a lawsuit it had initiated against Whitinger pending in the Central District of California ("the California lawsuit").  *See* West Dec. at ¶12.  Whitinger moved to dismiss the California lawsuit on several grounds,

---

[1] Whitinger's counsel was already scheduled to be in California resuming the deposition of Defendant Michael Egan

and in response, Internet Brands submitted a declaration from Joseph Rosenblum, in which Rosenblum identified himself as the Chief Technical Officer for Internet Brands. *See* West Dec. at ¶12 and Exhibit J thereto.   Internet Brands had not disclosed Rosenblum as a fact witness in the Texas lawsuit.

Rosenblum's declaration asserts, among other things, that Internet Brands discovered Whitinger was stealing its traffic by re-directing customers through manipulation of the software code.  *See* Exhibit J to West Dec. Rosenblum claims in his declaration that Whitinger improperly put "back doors" in the software code, and he also alleges that Whitinger had copied the davesgarden.com plant files database, for use on cubits.org.  *See* Exhibit J to West Dec. Thus, without a doubt, Rosenblum is someone who is "likely to have discoverable information" with respect to the Texas lawsuit.  *See* Fed. R. Civ. P. 26 (a)(1)(A)(i).  Nearly every statement in his declaration is untrue, and he practically repeats the defamatory statements that gave rise to the Texas lawsuit.

Upon review of the Rosenblum declaration, on January 4, 2011, Whitinger's counsel sent a written request to Internet Brands' counsel for Rosenblum's deposition. *See* West Dec. at ¶13, see also Exhibit K.  Internet Brands' counsel did not respond; accordingly, on January 10, 2011, Whitinger served Rosenblum with a deposition subpoena for deposition on January 26, 2011.  *See* West Dec. at ¶14, *see also* Exhibit L.

-7-

**D.      Internet Brands Brings The Dispute Over All Three Depositions To California**

As of December 30, 2010, Whitinger had noticed, and subsequently subpoenaed, Giberti and Walsh for deposition on January 25 and 26, 2011.  As of January 10, 2011, Whitinger had noticed, and subsequently subpoenaed, Rosenblum for deposition on January 26, 2011.  On January 12, 2011, Internet Brands filed a Motion to Quash Giberti and Walsh's deposition in the Texas lawsuit, although it did not seek any immediate ruling from the Texas Court.  (Internet Brands never filed anything in the Texas lawsuit with respect to Rosenblum).

On January 20, 2011, while the parties attended depositions of other witnesses in this case, counsel for Internet Brands indicated that he did not intend to present Rosenblum, Giberti, or Walsh for deposition the following week.  *See* West Dec. at ¶16.  Whitinger's counsel demanded to know what basis Internet Brands had for not presenting these witnesses, when all it had done was to file a Motion to Quash with respect to Giberti and Walsh—and it had not filed *anything* with respect to Rosenblum.  Internet Brands' only response was that if the Texas Court ruled in its favor, the notices would be quashed. *See* West Dec. at ¶16.

However, on January 21, 2011, the Honorable Michael Schneider entered an Order in the Texas lawsuit which dismissed Internet Brands' Motion to Quash and Motion for Protective Order, without prejudice to its re-filing in California.  *See* West Dec. at ¶17 and Exhibit N thereto.  Thus, in light of the express ruling which denied the relief Internet Brands sought, Whitinger's counsel reiterated in letters and emails its intent to take Giberti's, Walsh's, and Rosenblum's depositions as properly noticed.  *See* West Dec. at ¶18 and Exhibit O thereto.

On, January 24, 2011, Whitinger's counsel traveled to California for the depositions.  *See* West Dec. at ¶19. That evening, Counsel for Internet Brands, David Tarlow (counsel of record for Internet Brands in the California lawsuit), emailed Whitinger's counsel with a document, entitled Motion to Quash, and in the email Tarlow stated:

> **We filed a motion to quash the depo subpoenas for Rosenblum, Walsh and Giberti <u>today</u>.  We served it by mail as required, but I wanted you to have the motion as soon as possible.  So its [sic] attached hereto.  As my client originally had filed the motion to quash in the Texas court and was told by the Court to do it here in California, this should come as no surprise. Accordingly, Rosenblum, Walsh and Giberti will not be produced on the dates set forth in your subpoenas.**

*See* West Dec. at ¶19 and Exhibit P-1 thereto (emphases added).

Whitinger's counsel immediately replied to Mr. Tarlow's email and *once again* reiterated Whitinger's position that:  (i) simply filing a motion (even in California) did *nothing* to relieve the witnesses of their responsibility to appear at their depositions; and (ii) if the witnesses did not appear, they would be in violation of federal deposition subpoenas <u>issued from this Court</u>, for which Whitinger would seek sanctions.   *See* West Dec. at ¶ 19 and Exhibit  P-2 attached thereto.

Nevertheless, neither Giberti, Walsh, nor Rosenblum appeared for their depositions, and Whitinger's counsel was forced to take a Certificate of Non-Appearance for each deposition.  *See* West Dec. at ¶21 and Exhibit R thereto. Moreover, Internet Brands subsequently admitted to Whitinger's counsel that it actually did <u>not</u> file its Motion to Quash in this Court on January 24, 2011, as Mr. Tarlow had asserted in his email.  *See* West Dec. at ¶20 and Exhibit Q thereto. Internet Brands' motion was not filed until January 25, 2011, the day the depositions were scheduled to begin. *See* Exhibit Q to West Dec.

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

1    For the reasons set forth herein, Whitinger requests that this Court deny

2  Internet Brands' Motion to Quash for Protective Order and order that the depositions

3  go forward.

4

5                                      **III.**

6                    **ARGUMENTS AND AUTHORITIES**

7

8  A.    **Whitinger Is Entitled To Discover Information That Is Relevant To His**

9        **Claims**

10

11   Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding

12  *any* matter, not privileged, which is relevant to the subject matter involved in the

13  pending action." (emphasis added).  Rule 30(a)(1) provides that a "party may take

14  the testimony of *any* persons, including a party, by deposition upon oral

15  examination." Fed. R. Civ. P. 30(a)(1) (emphasis added).  "The Federal Rules

16  presume openness in the discovery process and provide mechanisms for limiting it

17  that apply equally to all." *U.S. v. Phillip Morris, Inc.*, 209 F.R.D. 13, 19 (D.C. Dist.

18  2002; s*ee also, Nakash v. U.S. Dept of Justice*, 128 F.R.D. 32, 35 (S.D.N.Y. 1989)

19  ("The mere possibility that such [privilege] issues may arise does not merit the

20  drastic relief of quashing these subpoenas before a single question has been asked,")

21  *citing* J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 26.69; C.

22  Wright & Miller, *Federal Practice & Procedure* § 2037 (1970).  Furthermore,

23  discovery should not be treated as a game: "[g]enerally, the purpose of discovery is

24  to remove surprise from trial preparation so that parties can obtain evidence

25  necessary to evaluate and resolve their dispute."  *In re Syncor Erisa Lit*, 229 F.R.D.

26  636, 643 (C.D. Cal. 2005) (internal citations omitted).

27

28

1          With respect to counsel, the United States Supreme Court has

2    recognized that the attorney-client privilege "only protects disclosure of confidential

3    communications between the client and attorney; it does not protect the disclosure of

4    underlying facts." *Upjohn Co. v. United States*, 499 U.S. 383, 395–96 (1981).

5    Furthermore, "[p]re-existing facts that underlie the client's confidential

6    communications, whether oral or written, are not privileged, simply because the

7    client disclosed them to an attorney for the purpose of obtaining legal services."

8    Weinstein's Fed. Evid. §503.14 [4][a] (citing *Upjohn Co*., 449 U.S. at 395).

9

10         Moreover, when an attorney is not providing legal advice, but instead is

11   acting in some other capacity (such as investigator or business advisor), there is no

12   privilege.  *See Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996); *see also*, *Mori v.*

13   *Baroni*, No. CIV–S–07–0295–JAM GGH, 2008 WL 2509143 *5 (E.D. Cal. 2008),

14   *citing Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) ("Federal law

15   is uniform that unless the attorney is receiving or giving confidential *legal* advice,

16   his or her participation in business will not be shielded from inquiry.").

17

18         In addition to those situations where the testimony of an attorney may

19   not be considered privileged because the attorney has acted in an investigative role

20   or as a participant in business activities, federal courts have recognized that

21   attorneys may be essential witnesses when the attorney is a fact witness.  *See In re*

22   *Interactive Network*, 243 B.R. 766, 767 (N.D. Cal. 2000), citing *Johnston*

23   *Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352

24   (D. N.J. 1990); *see also American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D.

25   582, 588 (S.D. Cal. 1995) ("Federal courts have recognized that there *are*

26   circumstances under which the deposition of a party's attorney will be both

27   necessary and appropriate, for example, where the attorney is a fact witness, such as

28

-11-

an 'actor or a viewer.'").  In those situations, the attorney may be the person with the most relevant information to matters at issue in the lawsuit.  *See American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995).

Finally, when an attorney is designated as a *fact witness*, the party who made the designation can hardly expect to prevent the attorney's testimony.  **"It is the height of legal chutzpah to be listed as a fact witness, but then refuse deposition because one is an attorney as well."**  *See Mori* 2008 WL 2509143 *5 (emphasis added).  An attorney "should know that when he is *designated to testify in a case* by an entity he represents […], his participation in litigation involving that entity, or its officers, is fraught with peril and, in fact, such situation is simply unfair to the opposing side." *Id.*; *see also In re Interactive Network*, 243 B.R. at 768 ("In fact, in light of Debtor's reservation of [attorney] as a possible trial witness, it would be unduly burdensome and disruptive to prohibit [attorney's] deposition.").

## B.   Giberti, Walsh And Rosenblum All Have Relevant Information

Giberti, Walsh, and Rosenblum are all persons with knowledge of facts relevant to the Texas lawsuit, and Internet Brands should not be permitted to shelter their testimony under the guise of attorney-client privilege, or unsupported claims that their testimony is irrelevant.

### 1.   Giberti is a fact witness with discoverable information

In this case, the cease and desist letter is a fundamental piece of evidence.  Giberti was involved in the development of the facts used in the cease and desist letter, the substance of which was replicated in the defamatory post. *See*

-12-

Exhibit S attached to West Dec.  Deposition testimony to date indicates that Giberti herself drafted the cease and desist letter, based on information she gathered from Internet Brands employees.  *See* Exhibit S attached to West Dec.  That is, to develop the factual assertions that went into the letter, Giberti had to talk to the relevant employees to get information on such things as whether there were "back doors" in the website; whether Whitinger had "injected HTML code" into his profile; and whether the plant list on cubits.org, closely matched the database that appears on davesgarden.com.  In gathering these types of facts, Giberti was not giving out legal advice, but was acting in a capacity as an investigator.  Such an activity results in the loss of attorney-client privilege.  *See Upjohn*, 449 U.S. at 395.

In addition to the foregoing, Whitinger alleges that this posting was done with malice.  West Dec. at ¶2 and Exhibit A.  To establish malice, the entirety of the circumstances surrounding the posting may be considered, as well as the defendant's motive and care.  *See Harte-Hands Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002).  In this case, the circumstances surrounding the post include the fact that Internet Brands sent the cease and desist letter, which contained allegations identical to the post, less than a week before the post was made.  Giberti prepared the letter, based on facts she had gathered.  *See* Cease and Desist letter, Exhibit A to Whitinger Dec.; s*ee* Exhibit S to West Dec.

Finally, Internet Brands *designated Giberti as a fact witness*, on the very subject upon which Whitinger seeks to depose her.  *See* Exhibit F-1 to West Dec.  Irrespective of any the foregoing facts, this fact by itself is sufficient reason to allow Whitinger to take her deposition.  *See In re Interactive Network*, 243 B.R. at 767.  Internet Brands' assertion that Giberti was only listed as a fact witness because

she had non-privileged information in her possession which has subsequently been produced, is disingenuous. *See* DE 1 at 4:12-14.  If that were the case, then Internet Brands would not have listed her as a fact witness, but would have simply identified the relevant documents in her possession in its Initial Disclosures, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii).

### 2.   Walsh is a fact witness with discoverable information

The second central point of contention in the Texas lawsuit is the non-compete agreement, which Internet Brands, to this day, still claims it has a right to enforce against Whitinger.  The facts surrounding how Internet Brands gathered information related to non-compete agreement are discoverable, and, moreover Internet Brands itself has indicated that Walsh is the person with the most knowledge regarding NameMedia's sale of davesgarden.com to Internet Brands (see West Dec. at ¶¶7–8 and Exhibits F-1 and F-2 thereto), thus she would know (i) whether the parties intended, or not, to include the non-competition agreement with Whitinger; (ii) what communications were exchanged with NameMedia regarding this fact; and (iii) other circumstances surrounding Internet Brands investigation of its position that it was entitled to enforce the non-competition agreement.

Again, the fact that Internet Brands *expressly disclosed Walsh as a fact witness* (*see* Exhibit F-1 to West Dec.) illustrates the disingenuousness of its current position that she has no discoverable information.  Internet Brands cannot with credibility maintain that the fact Walsh is an attorney shields her from deposition in this case. *See In re Interactive Network*, 243 B.R. at 767.

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

1    　　　　Internet Brands' argument that the information sought from Walsh can

2    be obtained from a third party, i.e., NameMedia representatives, is simply irrelevant.

3    That the information may be discoverable from another source, does not provide a

4    legal basis for protection.  In any event, only Walsh, and not NameMedia, would

5    have information regarding Internet Brands' investigation of its position that it was

6    entitled to enforce the non-competition agreement, and why Internet Brands chose to

7    assert that it had an enforceable agreement with Whitinger, when it did not have

8    one.

9

10   　　　**3.**　　**Rosenblum is a fact witness with discoverable information**

11

12   　　　　In his declaration, Rosenblum addresses the very facts contained in the

13   cease and desist letter, and in the defamatory post. *See* Rosenblum Dec. Exhibit I to

14   West Dec. Rosenblum is clearly someone who has knowledge of facts and

15   discoverable information with respect to the Texas lawsuit.  Nearly every statement

16   in his declaration is untrue, and he practically repeats the defamatory statements that

17   gave rise to the Texas lawsuit.  Thus, Whitinger is entitled to take his deposition in

18   the Texas lawsuit.

19

20   　　　　Furthermore, Internet Brands has not provided any reasonable basis for

21   resisting Rosenblum's deposition.  The fact that Internet Brands believes Rosenblum

22   does not possess the <u>best</u> knowledge on an issue, is simply not a proper basis for

23   quashing his deposition subpoena.

24

25

26

27

28

-15-

**C.**      **Internet Brands' Reliance On *Shelton* Is Misplaced**

          In its Motion to Quash, Internet Brands relies primarily on the standard the Eighth Circuit developed in *Shelton v. American Motors Corp.*, 805 F.3d 1323 (8th Cir. 1986) as a basis for resisting Giberti's and Walsh's depositions.  *Shelton*, however, is inapposite for several reasons.  First, the Ninth Circuit has never expressly adopted the standard articulated in *Shelton*.  Furthermore, other circuit courts have adopted less strict standards than *Shelton*.  *See, e.g., Younger Mfg Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 589 (C.D. Cal. 2007), citing *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71–72 (2d Cir. 2003).  Furthermore, the attorney sought to be deposed in *Shelton* was the party's *litigation* counsel, so the concern was an exposure of litigation strategy.  Additionally, in *Shelton*, the party resisting the deposition had *not* expressly disclosed litigation counsel as a fact witness.

          In fact, in 2002, the Eighth Circuit limited its holding in *Shelton*, explaining that those criteria only limit attorney depositions when (1) trial and/or litigation counsel are being deposed, and (2) when such questioning would expose litigation strategy in the pending case. *See U.S. v. Phillip Morris*, 209 F.R.D. at 17, citing *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730–31 (8th Cir. 2002).  In the present case, Giberti and Walsh are <u>not</u> trial counsel, and have <u>not</u> entered an appearance in the Texas lawsuit.  Furthermore, Whitinger does not seek any information related to Internet Brands' litigation strategy in the Texas case.

**D.**     <u>**Authority Of This Court To Deny Internet Brands' Motion and to**</u>
<u>**Compel And Hold In Contempt**</u>

Federal Rule of Civil Procedure 45(e) permits a court from which a subpoena is issued to hold a person in contempt "who, having been served, fails without adequate excuse to obey the subpoena." *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991) ("Undeniably, a valid subpoena is a legal instrument, noncompliance with which can constitute contempt of court"); *see* Fed. R. Civ. P. 37 (a)(3)(B)(i) (allowing the court to compel a deponent to answer deposition questions).

Whitinger properly noticed and served deposition subpoenas *from this Court* on Giberti, Walsh, and Rosenblum.  Internet Brands' witnesses deliberately ignored those subpoenas, without any court-ordered relief therefrom, and Whitinger was forced to take Certificates of Non-Appearance.  Pursuant to Rule 45(e), Whitinger seeks an Order finding Internet Brands, Giberti, Walsh and Rosenblum in contempt.

Internet Brands apparently relied on its late-filed Motion to Quash as its *only* support for its decision to ignore the deposition subpoenas issues *from this court*.  The Motion to Quash, however, was procedurally defective, and substantively flawed.  Internet Brands' Motion to Quash was procedurally defective because it failed to comply with Fed. R. Civ. P. 45, which required it to "timely" file its Motion to Quash.  *See* Fed. R. Civ. P. 45.  A motion to quash filed *on the day* of the deposition is <u>not</u> timely.  Furthermore, Internet Brands violated Local Rules 7-3, 37-1 and 45 by not first meeting and conferring with counsel and following the proper procedures provided by Local Rule 37 (or seeking relief from these rules

MEMORANDUM OF POINTS AND AUTHORITIES
ISO OPPOSITION TO MOTION TO QUASH

from the court).  Internet Brands' Motion to Quash is substantively flawed for the reasons set forth *infra* at II(B).

Internet Brands has failed to demonstrate *any* adequate basis for its refusal to respond to the properly noticed subpoenas, or for the issuance of a protective order; accordingly, Internet Brands and its witnesses should be held in contempt, and their depositions should be compelled.

## IV.

## CONCLUSION

Based on the foregoing reasons, David Whitinger respectfully requests that this Court order the following: (1) that Internet Brands' Motion to Quash and for Protective Order be denied in its entirety (2) a finding of contempt against Internet Brands, Giberti, Walsh and Rosenblum for violating the subpoenas issued from this Court; (3) that Internet Brands produce Giberti, Walsh, and Rosenblum for deposition on the earliest dates possible, at the location of Whitinger's counsel's choosing; and (4) that Internet Brands reimburse Whitinger for travel expenses, to the extent any are incurred, in connection with taking the depositions of Giberti, Walsh, and Rosenblum.  The foregoing is without prejudice to David Whitinger's request for sanctions and attorneys' fees sought in its Motion for Contempt and to Compel, which is scheduled to be heard by this Court on March 14, 2011.

Dated:  February 14, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
                */s/ Jennifer A. Trusso*
                Jennifer A. Trusso
        Attorneys for Movant David Whitinger

-18-

MEMORANDUM OF POINTS AND AUTHORITIES
                                                    ISO OPPOSITION TO MOTION TO QUASH

1

## <u>CERTIFICATE OF SERVICE</u>

2
        I hereby certify that on February 14, 2011, I filed the foregoing

3
**DAVID WHITINGER'S MEMORANDUM OF POINTS AND**

4
**AUTHORITIES IN SUPPORT OF HIS OPPOSITION TO INTERNET**

5
**BRANDS' MOTION TO QUASH** with the Court through this district's CM/ECF

6
system. Pursuant to Local Rule 5-3.3, the "Notice of Electronic Filing"

7
automatically generated by CM/ECF at the time the document is filed with the

8
system constitutes automatic service of the document on counsel of record who have

9
consented to electronic service.

10

11
        Patrick A. Fraioli

12
        David Tarlow
        Ervin, Cohen & Jessup, LLP

13
        9401 Wilshire Boulevard, Ninth Floor

14
        Beverly Hills, California 90212-2974
        **Attorney for Internet Brands, Inc**

15

16
        Wendy E. Giberti
        General Counsel, P.C.

17
        P. O. Box 3054

18
        Manhattan Beach, CA 90266
        **Attorney for Internet Brands, Inc.**

19

20
        */s/ Jeanette D. Francis*

21
        Jeanette D. Francis

22

23

24

25

26

27

28

-19-